UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHANE ROBERT ROSSETER,

                                        Plaintiff,

                                                              9:10-CV-1097
v.                                                            (NAM/TWD)

PAUL ANNETTS, et al.,

                                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

SHANE ROBERT ROSSETER, 08-A-1728
Plaintiff *pro se*
Cayuga Correctional Facility
P.O. Box 1186
Moravia, NY 13118

HON. ERIC T. SCHNEIDERMAN                        JAMES SEAMAN, ESQ.
Attorney General for the State of New York
Counsel for Defendants Annetts, Coniglio,
Cully, Deuel, Khahaifa, Lewis,
     and Unger
The Capitol
Albany, NY 12224

MAYNARD, O'CONNOR, SMITH                         THOMAS G. DALEY, ESQ.
     & CATALINOTTO, LLP
Counsel for Defendant Kercull
6 Tower Place
Albany, NY 12203

BAILEY, KEELEHER & JOHNSON, P.C.                 CRYSTAL R. PECK, ESQ.
Counsel for Defendants Bowen and Strader
Pine West Plaza 5, Suite 507
Washington Avenue Extension
Albany, NY 12205

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c).  Plaintiff Shane Robert Rosseter claims that the following Defendants violated his Eighth Amendment right to adequate medical care: Saratoga County Sheriff James D. Bowen ("Bowen"), Saratoga County Correctional Facility ("SCCF") physician Dr. Stephen Strader, MD ("Strader"), Dr. Robert G. Kercull, MD ("Kercull"), Downstate Correctional Facility Superintendent Paul Annetts ("Annetts"), Wyoming Correctional Facility Superintendent David Unger ("Unger"), Wyoming Correctional Facility physician Dr. DePhelip ("DePhelip")[1], Orleans Correctional Facility Superintendent Sibatu Khahaifa ("Khahaifa"), Orleans Correctional Facility physician Dr. D. Lewis ("Lewis"), Livingston Correctional Facility Superintendent Malcom R. Cully ("Cully"), Livingston Correctional Facility physician Dr. Colleen Deuel, MD ("Deuel"), and Attica Correctional Facility physician Dr. G. Coniglio ("Coniglio").  (Dkt. No. 1.)

More specifically, liberally construed, Plaintiff's *pro se* complaint alleges that:

(1)     On November 9, 2007, while confined at the SCCF, Plaintiff suffered "a muscle tear over the lateral deltoid area, ligament damage, nerve damage, a fractured wrist, a ruptured biceps tendon, a rotator-cuff tear along with severe continual pain and severe loss of functional limitations along with loss of range of motion." (Dkt. No. 1 at 6.[2])

---

[1]     Dr. DePhelip, a physician at Wyoming Correctional Facility, is named as a Defendant in this action.  (Dkt. No. 1 at 1.)  The summons issued to him was returned unexecuted on March 3, 2011.  (Dkt. No. 41.)  Dr. DePhelip has not appeared in this action.

[2]     References are to CM/ECF page numbers of the relevant docket entry.

(2)  Defendants Bowen, Strader, Annetts and Unger unreasonably delayed Plaintiff's
     medical care, failed to diagnose his fractured wrist, failed to meet outside
     specialists' appointments and carry out specialists' orders, provided inadequate
     care which resulted in the "unnecessary and wanton infliction of pain," permanent
     disability, and disfigurement, and neglected their duty to protect the health of
     Plaintiff.  *Id*. at 8, 10, 12 and 13.

(3)  Defendant Kercull performed an inadequate physical exam of Plaintiff, chose a
     medically unacceptable plan of treatment, failed to perform and/or order
     appropriate medical tests, delayed medical examination and treatment and denied
     medical treatment.  *Id*. at 11.

(4)  Defendants DePhelip, Khahaifa and Cully unreasonably delayed Plaintiff's
     medical care, failed to meet outside specialists' appointments and carry out
     specialists' orders, provided ineffective medical treatment which resulted in the
     "unnecessary and wanton infliction of pain," permanent disability, and
     disfigurement, and neglected their duty to protect the health of Plaintiff.  *Id*. at 14,
     15 and 17.

(5)  Defendants Unger and Cully understaffed the medical departments at their
     respective facilities causing delays in Plaintiff's medical treatment. *Id*. at 13, 17.

(6)  Defendant Lewis unreasonably delayed Plaintiff's medical care and ignored his
     need for  surgery.  *Id*. at 16.

(7)  Defendant Deuel unreasonably delayed Plaintiff's medical care, failed to meet
     outside specialists' appointments and carry out specialists' orders, provided
     ineffective medical treatment which resulted in the "unnecessary and wanton
     infliction of pain," permanent disability, and disfigurement, and neglected her
     duty to protect the health of Plaintiff.  *Id*. at 18.  She also told Plaintiff  his "arm
     cannot be fixed."  *Id*.

(8)  Defendant Coniglio delayed Plaintiff's medical care, misdiagnosed his condition,
     performed surgery that failed and abandoned him as a patient.  *Id*. at 19.

(9)  In short, each and every facility in which Plaintiff has been confined since
     November 9, 2007 denied him adequate medical care for the injuries he suffered
     on November 9, 2007.  *Id*. at 8-23.

Currently pending before the Court are motions for summary judgment by Defendants

Bowen, Strader and Kercull pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt.

Nos. 88 and 90.)  Generally, Defendants' motions, which Plaintiff has opposed (Dkt. Nos. 97 and

3

103), raise the following issues: (1) whether Plaintiff has established an Eighth Amendment claim for cruel and unusual punishment for deliberate indifference to a serious medical need; (2) whether Defendant Kercull was a "state actor;" (3) whether Defendant Bowen was personally involved in any alleged constitutional violation; and (4) whether Defendants Bowen, Strader and Kercull are protected by qualified immunity.  (Dkt. Nos. 88 and 90.)

A motion to dismiss or, in the alternative, to transfer the action to the Western District of New York by Defendants Annetts, Unger, Khahaifa, Lewis, Cully, Deuel and Coniglio (collectively "State Defendants") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is also pending.  (Dkt. No. 51.)   Plaintiff has opposed this motion.  (Dkt. Nos. 56 and 62.)

Finally, a motion by Plaintiff seeking appointment of an expert pursuant to Federal Rule of Evidence 706 is presently before the Court.  (Dkt. No. 77.)  Defendants Bowen, Strader and Kercull oppose this motion.  (Dkt. Nos. 80 and 81.)

For the reasons discussed below, I recommend that the motions for summary judgment of Defendants Bowen, Strader and Kercull be granted.  I further recommend that the State Defendants' motion to dismiss be granted in part and denied in part and that their motion to transfer this action be granted.  Finally, I deny Plaintiff's motion seeking appointment of an expert without prejudice.

## I.    MOTIONS FOR SUMMARY JUDGMENT

Plaintiff alleges that SCCF Defendants Bowen and Strader violated his Eighth Amendment rights by failing to provide adequate medical care, delaying his access to medical care, failing to diagnose a wrist fracture, failure to carry out medical specialists' orders and

failing to meet specialists' appointments.  (Dkt. No. 1 at 8, 10.)  Plaintiff alleges Defendant

Kercull violated his Eighth Amendment rights by failing to perform an adequate medical exam,

failing to order appropriate medical testing, providing unacceptable medical treatment, and

delaying the examination and treatment of Plaintiff.  *Id.* at 11.

Defendant Bowen maintains that he had no personal involvement in Plaintiff's medical

care and therefore Plaintiff's medical deliberate indifference claim fails as to him.  Both

Defendant Strader and Defendant Bowen argue that Plaintiff's medical treatment at SCCF was at

all times appropriate and they did not exhibit deliberate indifference to serious medical needs.

Both Defendants also claim they are entitled to qualified immunity.  Defendant Kercull's motion

for summary judgment is predicated on the arguments that he is not a state actor, and even if he

were, he did not exhibit deliberate indifference in his care and treatment of Plaintiff's medical

condition.  He also argues he is entitled to qualified immunity.

For the reasons discussed below, I find that each of these Defendants is entitled to

summary judgment on the merits of Plaintiff's Eighth Amendment claims.  Therefore, I have not

addressed these Defendants' arguments regarding qualified immunity.

### A.    Facts Relevant to the Motions for Summary Judgment

The following material facts, when viewed most favorably to Plaintiff, are supported by

evidence in the record, and are not specifically controverted by Plaintiff.

Plaintiff became incarcerated at SCCF in September 2007.  (Dkt. No. 88-2 at 103-104.)

Upon entering the SCCF, Plaintiff underwent a medical assessment which showed he suffered

from a sinus infection, chronic lower back pain, right muscle weakness and tremors in his hands.

(Dkt. No. 90-17 at 2-4; Dkt. No. 90-18 at 2.[3])  On November 9, 2007, Plaintiff injured his left arm while trying to perform a pull up on a pull up bar at SCCF.  (Dkt. No. 1 at 6; Dkt. No. 88-3 at 35, 36 and 42; Dkt. No. 97-4 at 2.)  Plaintiff's left arm was assessed by SCCF Nurse Penny Bott, RN that same day shortly after the injury occurred.  (Dkt. No. 88-3 at 45-46; Dkt. No. 90-13 ¶ 13; Dkt. No. 97-4 at 2.)  Nurse Bott immediately notified Defendant Strader by telephone of Plaintiff's injury and her assessment of Plaintiff.  (Dkt. No. 97-4 at 2.)  Dr. Strader directed that Plaintiff be taken to Saratoga Hospital Emergency Department for further evaluation.  *Id.*

Plaintiff was transported on the day of the injury to the Saratoga Hospital Emergency Room where he was examined by Laureen Hunter, R-PA.  (Dkt. No. 90-18 at 9.)  The Emergency Room records state that Plaintiff presented "for evaluation with pain in his forearm. He has no other specific history."  *Id.*  Upon physical examination, Plaintiff had tenderness in his forearm

---

[3]    Defendants' motions for summary judgment are supported by prison records, including grievance records from SCCF, prison medical records, and private physicians' medical records.  (Dkt. Nos. 88 and 90.)  Motions for summary judgment must be supported by admissible evidence.  *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).  Hearsay evidence is not admissible unless it falls within an exception to the hearsay rule.  Fed. R. Evid. 802.  Medical and prison grievance records, although hearsay, may be admissible under the business records exception to the hearsay rule.  That exception renders admissible records of "acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge" but only if such records are "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation."  Facts supporting admissibility must be supplied "by the testimony of the custodian or other qualified witness or by certification" that complies with Federal Rule of Evidence 902.  Fed. R. Evid. 803(6).  Here, many of the records are not supported by any custodial affidavit and have not been certified. Therefore, the records are not technically admissible.  See *Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980).  I have considered them as part of my independent review of the record, however, because Plaintiff does not dispute any of the submissions and indeed submits many of the same uncertified documents.  (Dkt. No. 97.)  I caution defense counsel that all medical and grievance records should, in the future, be properly authenticated and accompanied by an affidavit or certification that complies with Rule 803.

and appeared to have a "little tear" in the biceps tendon.  *Id.*  Plaintiff had strength in the arm and was neurovascularly intact.  *Id.*  He underwent an x-ray of his left elbow which showed no evidence of fracture or dislocation.  *Id.* at 8.  Hunter made a final diagnosis of "Tendon strain/tear to the biceps tendon."  *Id.*  Plaintiff's arm was placed in a splint, he was prescribed Motrin and referred for follow-up care with orthopedist Defendant Kercull.  *Id*. at 9.

When Plaintiff returned to SCCF that evening, Nurse Bott administered 800 mg of Ibuprofen to Plaintiff for his pain.  (Dkt. No. 90-15 at 10; Dkt. No. 90-16 at 7.)  Later that week, Defendant Strader personally assessed Plaintiff's injury and reviewed the emergency room findings with him; Strader agreed with Saratoga Hospital's assessment that Plaintiff ruptured his left bicep tendon and referred him to Defendant Kercull for further evaluation.  (Dkt. No. 90-13 at 6; Dkt. No. 90-16 at 3.)  Defendant Strader also prescribed 5mg of Flexeril[4] to be administered to Plaintiff in the evenings in response to Plaintiff's complaints of continued pain.  (Dkt. No. 90-15 at 10; Dkt. No. 90-16 at 8.)

On November 13, 2007, just four days after Plaintiff's arm was injured, he filed an inmate grievance against SCCF alleging, among other things, improper medical treatment in connection with his accident.  (Dkt. No. 97-4 at 6.)  The grievance was ultimately denied by non-defendants Lt. Peter F. Arpei of the SCCF and Frances T. Sullivan of the State Commission of Correction.  *Id*. at 7-8, 14-15.

On November 14, 2007, Plaintiff saw Defendant Kercull at his private office located on

---

[4]     Flexeril is a muscle relaxant prescribed to relieve muscle spasms resulting from injuries such as sprains, strains, or pulls.  Combined with rest and physical therapy, Flexeril provides relief of muscular stiffness and pain.  *The PDR Pocket Guide to Prescription Drugs* 577 (Bette LaGow, ed., 7th ed. 2005).

Church Street in Saratoga Springs.  (Dkt. No. 97-4 at 4-5; Dkt. No. 88-3 at 52-56.)  Plaintiff reported to Dr. Kercull that he had persistent throbbing pain in his left arm at the front of the elbow.  *Id.*  Dr. Kercull performed a physical examination of Plaintiff and noted a deficit in the left biceps tendon at its insertion on the proximal forearm and tenderness at the biceps tendon insertion distally.  *Id.*  He diagnosed a probable ruptured left biceps tendon and recommended that Plaintiff undergo an MRI of his left elbow.  *Id.*  Dr. Kercull also recommended a splint and directed Plaintiff to continue taking Flexeril and Motrin to manage his pain.  *Id.*

Plaintiff underwent an MRI on or about November 16, 2007, but due to poor quality of the images a second MRI was performed successfully on November 23, 2007.  (Dkt. No. 88-3 at 57, 58, 61.)  Plaintiff continued to complain of pain and on November 21, 2007 his medication was changed by Defendant Strader to Ultram and Flexeril.  (Dkt. No. 90-16 at 8.)  Defendant Kercull reviewed the MRI report, which suggested a partial tear of the distal biceps tendon, but he did not think it was an emergency requiring immediate surgery.  (Dkt. No. 88-3 at 63-64; Dkt. No. 88-4 at 22.)  Defendant Kercull noted that surgery is often not recommended for a partially ruptured biceps tendon unless the patient is very active, vigorous, and requires a strong biceps tendon.  (Dkt. No. 88-4 at 22.)  Plaintiff alleges taking into account his activity level showed bias in Defendant Kercull's treatment of him.  (Dkt. No. 103 at 1.)  However, Defendant Kercull also noted that Plaintiff would have minimal functional impairment due to the partially ruptured tendon and recommended conservative treatment by continuing pain medications and advising Plaintiff to wait three weeks to resume normal activities with the injured arm.  *Id.*

Plaintiff testified that he treated with Defendant Kercull at the physician's private office and was not treated by him in a jail or correctional facility, nor had he ever seen Defendant

Kercull treat inmates in a jail or correctional facility.  (Dkt. No. 88-3 at 126-127.)  Defendant

Kercull reported that has never been employed by the SCCF, nor has he ever had a contract or

referral arrangement with the facility. (Dkt. No. 88-4 at ¶ 19.)  He is a private orthopedic

physician who was on call for Saratoga Hospital's Emergency Room at the time of Plaintiff's

treatment there and, as an indigent patient, Plaintiff was referred to him for follow up pursuant to

the hospital's practice.  *Id.* at ¶ 5.

Plaintiff disagreed with Defendant Kercull's recommendation of non-operative treatment

and requested a second opinion from an orthopedist specializing in sports injuries.  (Dkt. No. 90-

16 at 4; Dkt. No. 90-18 at 24.)  Defendant Strader granted that request and scheduled an

appointment for Plaintiff with another orthopedic surgeon.  *Id.*  On December 7, 2007, Plaintiff

was then seen by a non-party physician, Dr. Samuel Caldwell, who confirmed the diagnosis of a

partial left biceps tendon tear and indicated it was "reasonable" to fix the tear.  (Dkt. No. 90-18 at

26-28.)  On December 20, 2007, Dr. Caldwell performed a surgical repair of Plaintiff's partially

torn distal biceps tendon.  *Id.* at 30-31.  Nothing in Dr. Caldwell's operative report suggests the

tear was worsened between the time of the injury and the time of the surgery.  *Id.*  Following

Plaintiff's surgery, his arm was put in a cast and Dr. Caldwell prescribed Lortab[5] to help manage

his pain.  *Id.*

From the time of the injury to the time of the surgery and beyond, Plaintiff continued to

receive pain medication as ordered by the Defendant physicians and Dr. Caldwell.  (Dkt. No. 90-

16 at 7-12; Dkt. No. 90-15 at 2-33.)  Plaintiff did not see Defendant Kercull again after

---

[5]      Lortab is another name for Vicodin.  It is prescribed for the relief of moderate to
moderately severe pain.  *The PDR Pocket Guide to Prescription Drugs* 1557 (Bette LaGow, ed.,
7th ed. 2005).

November 14, 2007 and testified that his treatment with Dr. Kercull had ended by the time he

started seeing Dr. Caldwell.  (Dkt. No. 88-3 at 134, 145.)  Plaintiff further testified that, at the

time of his appointments with Dr. Kercull, he was focused on the pain in his biceps area; it was

only later that he began to distinguish pain in other parts of his left arm.  *Id.* at 48-49, 65-66, 111-

112.

Dr. Caldwell saw Plaintiff for a surgical follow up examination on December 26, 2007.

(Dkt. No. 90-18 at 33-35.)  Plaintiff complained for the first time at this examination of shoulder

pain and shoulder mobility problems.  *Id.*  Dr. Caldwell advised Plaintiff that his shoulder could

not be examined while his arm was in a cast and that he would have to wait for his shoulder to be

evaluated.  *Id.*

The records of SCCF disclosed in this matter indicate that Plaintiff made a medical

request on December 29, 2007 seeking help for pain in his wrist and hands.  (Dkt. No. 90-19 at

25.)  Defendant Strader addressed Plaintiff's complaints by giving 100 mg of Tylenol[6] and 800

mg of Ibuprofen three (3) times a day.  *Id.*; see also Dkt. No. 90-16 at 5.  There is no other

mention of wrist issues while Plaintiff remained at the SCCF.  Plaintiff saw Dr. Caldwell again

on January 4, 2008, had his cast and stitches removed, and obtained additional pain medications.

(Dkt. No. 90-19 at 2-5.)  Dr. Caldwell did not note any issues with regard to Plaintiff's wrist or

shoulder.  *Id.*  However, on January 21, 2008, during another follow up examination, Dr.

Caldwell ordered an MRI of Plaintiff's left shoulder.  (Dkt. No. 90-19 at 7-11.)  The MRI,

completed on January 30, 2008, revealed a small rotator cuff tear in Plaintiff's left shoulder.  *Id.*

---

[6]      Tylenol is prescribed to relieve minor pain.  *The PDR Pocket Guide to Prescription Drugs* 1513 (Bette LaGow, ed., 7th ed. 2005).

at 13-15; Dkt. No. 97-4 at 17-18.   After reviewing the MRI report, Dr. Caldwell wrote on

February 11, 2008 that Plaintiff will "probably at some point require a repair of his rotator cuff."

*Id.* at 17.   However, Dr. Caldwell did not know when he would be able to schedule Plaintiff for

the surgery or whether the surgery could be performed prior to Plaintiff's transfer to a State

Correctional Facility.   *Id.*   Dr. Caldwell did not indicate in his records or to Plaintiff that the

surgical repair of Plaintiff's rotator cuff needed to be performed within a specified time frame.

*Id.*; Dkt. No. 88-3 at 94.

On March 27, 2008, a Uniform Sentence and Commitment Order was executed by the

Saratoga County Court Clerk committing Plaintiff to the custody of the New York State

Department of Correctional Services.[7]   (Dkt. No. 90-9 at 2-3.)   Thereafter, according to his

Complaint, Plaintiff resided in the state correctional facilities as follows: from March 28, 2008 to

April 9, 2008 at Downstate Correctional Facility; from April 9, 2008 to September 24, 2008 at

Wyoming Correctional Facility; from September 24, 2008 to December 1, 2008 at Orleans

Correctional Facility; from December 1, 2008 to the date Plaintiff filed his Complaint at

Livingston Correctional Facility (Dkt. No. 1 at 12-17.)   The State Defendants named in this

action are either the Superintendents of these facilities, or they are physicians who provided

---

[7]       It is not clear from the record whether Plaintiff was a state pretrial detainee during
the time relevant to this action while he was located at SCCF or whether he had been convicted.
The Due Process Clause of the Fourteenth Amendment protects the medical rights of pretrial
detainees, while the rights of convicted prisoners are protected by the Eighth Amendment.
*Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009).  However, both provisions apply the same
"deliberate indifference" standard.  *Id*. at 72.  This Report-Recommendation will refer to the
Eighth Amendment, but I am aware that some of Plaintiff's claims may properly be characterized
as arising under the Fourteenth Amendment.

medical treatment to inmates at these facilities[8] during the relevant time periods alleged in the Complaint.  *Id.*

### B.      Legal Standard Governing Motions for Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Id*.  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986).  Rather, a dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material[9] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

---

[8]       Plaintiff alleges he was treated by Defendant Coniglio and he references Attica Correctional Facility for that Defendant, although he does not allege he was ever located at Attica.  (Dkt. No. 1 at 19.)

[9]       A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

12

**C.     Whether Defendant Kercull is a State Actor**

Defendant Kercull argues that he is entitled to summary judgment because he is not a

state actor and did not act under color of state law.  (Dkt. 88-6 at 5-8.)  I recommend summary

judgment for Defendant Kercull because he was not a state actor.

42 U.S.C. § 1983 establishes a cause of action for "the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws" of the United States by a person

acting under color of state law.  *Wilder v. Va. Hosp. Ass'n.*, 496 U.S. 498, 508 (1990) (quoting 42

U.S.C. § 1983).  Thus, Plaintiff must show "(1) that some person [here Defendant Kercull] has

deprived him of a federal right, and (2) that the person who has deprived him of that right acted

under color of state . . . law."  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citations and

internal quotation omitted).  A private individual may be considered a state actor for purposes of

a constitutional challenge if his/her conduct is "fairly attributable to the state."  *Rendell-Baker*,

457 U.S. 830, 838 n.6 (1982) (citation and internal quotation omitted).

Defendant Kercull is a private orthopedic physician who accepts patient referrals from

Saratoga Hospital's Emergency Department.  (Dkt. No. 88-4 ¶¶ 1, 5.)  As such, in order to

prevail on any claim against Defendant Kercull under Section 1983, Plaintiff must first show that

Defendant Kercull, a private party, was "acting under color of state law" at the time he allegedly

violated Plaintiff's constitutional rights. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Sherlock v.*

*Montefiore Medical Center*, 84 F.3d 522, 527 (2d Cir. 1996).  A private individual can be held

liable under Section 1983 "only as a 'willful participant in joint activity with the State or its

agents.'" *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (quoting *Adickes v.*

*S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). "Actions by a private party are deemed state action

13

if there is a sufficiently close nexus between the State and the challenged action that the actions

by the private parties may be fairly treated as that of the State itself." *Chan v. City of New York*,

1 F.3d 96, 106 (2d Cir.), *cert. denied*, 510 U.S. 978 (1993) (citation and internal quotation

omitted). "The purpose of [the close-nexus] requirement is to assure that constitutional standards

are invoked only when it can be said that the State is *responsible* for the specific conduct of

which the plaintiff complains." *Id.* (emphasis in original; citations and internal quotation

omitted). The crucial inquiry in determining whether a private physician who provides medical

services to inmates is a state actor for purposes of Section 1983 is the relationship among the

State, the physician, and the plaintiff. See *West*, 487 U.S. at 56.

Defendant Kercull correctly relies on *Nunez v. Horn*, 72 F. Supp. 2d 24 (N.D.N.Y. 1999)

(Hurd, J.), to support the proposition that he was not a state actor. In *Nunez*, a private physician

who performed surgery on the plaintiff in a private hospital was found not to have been a state

actor for § 1983 purposes. *Id.* at 26-27. There, the private physician "freely performed his

medical duties in a much more physician-controlled environment" (i.e., the private hospital) as

opposed to a "prison hospital," which is "subject to all of the pressures and constraints resulting

from security concerns[.]" *Id.* at 27.

Here, like the situs of the medical care in *Nunez*, Defendant Kercull performed his work

outside of the jail, albeit in his private office not a private hospital. (Dkt. No. 88-4 ¶ 19; Dkt. No.

88-3 at 53, 126-127.)  Defendant Kercull stated: "I have never been employed by Saratoga

County Correctional Facility, nor have I ever had a contract with Saratoga County Correctional

Facility to treat inmates.  I have never had a referral arrangement with Saratoga County

Correctional Facility to treat inmates." *Id.*  Plaintiff was referred to Dr. Kercull because Dr.

Kercull was on call for Saratoga Hospital at the time of Plaintiff's emergency room visit there. *Id.* ¶ 5. While Defendant Kercull had an on call relationship with Saratoga Hospital, there is no direct contractual or other link between Dr. Kercull and SCCF. Therefore, I find there is no close-nexus requirement between Plaintiff and Defendant Kercull as articulated in *Chan*, 1 F.3d at 106 .

Accordingly, I find that Defendant Kercull was not a state actor and recommend that the Court grant his motion for summary judgment.[10]

### D. Whether Defendant Bowen Was Personally Involved

Defendant Bowen, as Sheriff of Saratoga County, was the supervisor of SCCF when Plaintiff was incarcerated there. Defendant Bowen argues he had no personal involvement in the medical care of Plaintiff and thus no involvement in the alleged constitutional violations at issue in this case. Defendant is correct.

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that

---

[10]     For the sake of completeness, I will also address the merits of Plaintiff's Eighth Amendment claim against Defendant Kercull in Section I(E).

unlawful conduct. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at

501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). In other words, supervisory officials

may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76

F.3d 72, 74 (2d Cir. 1996). Rather, supervisory personnel may be considered "personally

involved" if they (1) directly participated in the violation, (2) failed to remedy that violation after

learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom

under which the violation occurred, (4) had been grossly negligent in managing subordinates who

caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to

act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865,

873 (2d Cir. 1995).[11]

　　　To the extent that Plaintiff named Sheriff Bowen as a defendant because he allegedly

oversaw the medical professionals providing care to Plaintiff, as noted, supervisory officials may

not be held liable because they held a position of authority. *Black,* 76 F.3d at 74.

　　　To the extent that Plaintiff claims that Sheriff Bowen delayed his medical care, failed to

diagnose his medical conditions, failed to carry out outside specialists' orders, these allegations

fail. It is not alleged that Sheriff Bowen is a medical doctor, or that he personally provided

Plaintiff with medical care. (Dkt. No. 90-10 at ¶¶ 1, 12.) Sheriff Bowen never examined or

---

[11]　　In *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009), the Supreme Court ruled that
where the underlying constitutional claim is a claim of intentional discrimination, a supervisory
official's liability must be judged by the official's purpose rather than the official's knowledge of
subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing
*Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have
determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674
F.Supp.2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). I will assume for the purposes of this
motion that *Colon* remains good law.

diagnosed Plaintiff's arm.  He was not directly responsible for scheduling treatments or procedures or outside specialist's visits.  There is no showing that Sheriff Bowen created or became aware of an unconstitutional policy, practice or act, or was grossly negligent in supervising Drs. Kercull or Strader.  *Id.* at ¶¶ 7, 8, 12.

Accordingly, I recommend that summary judgment be granted to Defendant Bowen and the claims against him be dismissed due to his lack of personal involvement in any alleged constitutional violations.

### E.    Whether Defendants Exhibited Deliberate Indifference to Plaintiff's Serious Medical Needs

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments.  The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment.  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Id*. at 102.  Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care.  *Id*. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted).  "The objective 'medical need'

element measures the severity of the alleged deprivation, while the subjective 'deliberate

indifference' element ensures that the defendant prison official acted with a sufficiently culpable

state of mind."  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

        1.    <u>Objective Prong</u>

Where the allegation is that the defendant failed to provide any treatment for the medical

condition, "courts examine whether the inmate's medical condition is sufficiently serious."

*Salahuddin,* 467 F.3d at 280.  Where the challenge is to the adequacy of the treatment provided,

such as in cases where treatment is alleged to have been delayed or interrupted, the seriousness

inquiry focuses on "the particular risk of harm faced by a prisoner due to the challenged

deprivation of care, rather than the severity of the prisoner's underlying medical condition

considered in the abstract."  *Smith,* 316 F.3d at 186.

A "serious medical condition" is "a condition of urgency, one that may produce death,

degeneration, or extreme pain."  *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J.

dissenting) (citations omitted); accord, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996),

*cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698*,* 702 (2d Cir. 1998).

Relevant factors to consider when determining whether an alleged medical condition is

sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable

doctor or patient would find important and worthy of comment or treatment; (2) the presence of a

medical condition that significantly affects an individual's daily activities; and (3) the existence

of chronic and substantial pain.  *Id.* at 702-03.

Aside from Plaintiff's conclusory allegations, there is no proof in the record that

Plaintiff's partial biceps tear which was treated while he was located at SCCF and later

diagnosed small rotator cuff tear were serious medical conditions, i.e., conditions of urgency that were life threatening, degenerative or causing him "extreme" pain.  *Nance,* 912 F.2d at 607. Nowhere in Plaintiff's SCCF medical records is there an indication that Defendants Strader or Kercull or even non-party Dr. Caldwell were of the opinion that Plaintiff's partial biceps tear and small rotator cuff tear demanded immediate attention.  Nothing in those records suggests that any alleged delay between diagnosis and surgery for the partial biceps tendon tear resulted in degeneration of the original injury or severe pain.  On the contrary, the surgery preformed by Dr. Caldwell to repair the biceps tendon confirmed it was a partial tear, exactly what Defendant Kercull had diagnosed.  Nothing in the records suggests that Plaintiff complained of shoulder issues until after the surgical repair of the biceps tendon.  The diagnosis of a small rotator cuff tear was made shortly after the new shoulder complaint.  Even this diagnosis did not demand immediate attention as non-party Dr. Calwell suggested it would "probably" need repair "at some point."  (Dkt. No. 97-4 at 17.)

Nevertheless, Plaintiff does allege that he experienced some pain, and indeed the record shows he was medicated for complaints of pain.  He does not allege the pain was extreme or significant.  Still, I must review the facts in favor of this *pro se* Plaintiff.  Therefore, Plaintiff's claim that his arm caused him continued pain during the period he says Defendants failed to treat his injuries has effectively raised an issue, albeit weak, of disputed fact as to the objective prong of whether he suffered from a serious medical condition.  See *Benjamin v. Galeno*, 415 F.Supp.2d 254, 259 (S.D.N.Y. 2005), *aff'd*, 204 Fed.Appx. 979 (2d Cir. 2006) (Plaintiff who alleged "extreme pain" during time defendants failed to treat shoulder injury raised question of fact on "objective prong - whether he labored under a serious medical condition.").

2.    <u>Subjective Prong</u>

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quoting *Farmer*, 511 U.S. at 835). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835; *Ross v. Giambruno*, ___ Fed.Appx. ___,112 F.3d 505, 1997 U.S. App. LEXIS 14123, 1997 WL 216207 (2d Cir. 1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.* Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). However, malpractice that amounts to culpable recklessness constitutes deliberate indifference. Accordingly, "in certain instances, a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Chance*, 143 F.3d at 703 (citation and internal quotation omitted).

Turning to Plaintiff's claims and reviewing the facts in the light most favorable to

Plaintiff, it is clear that Plaintiff injured his left arm on November 9, 2007 while incarcerated at SCCF.  He was almost immediately assessed by a facility nurse who then called Defendant Strader and, upon his recommendation, had the Plaintiff transported to Saratoga Hospital that day.  The hospital emergency room provider evaluated his complaint of left forearm pain, ran diagnostic tests and ultimately diagnosed a left biceps tendon tear.  She prescribed pain medication and referred the Plaintiff to an orthopedist, Defendant Kercull.  Upon returning to SCCF, Plaintiff received medications for pain management and continued to receive pain medications as ordered.  Defendant Strader personally assessed Plaintiff within days of the injury, agreed that Plaintiff partially ruptured his biceps tendon and agreed with the referral to Defendant Kercull.  On November 13, 2007, just four days after the injured occurred, Dr. Kercull evaluated Plaintiff who complained only of forearm pain at the time, diagnosed a probable biceps tendon tear, and ordered an MRI.  The MRI, successfully completed on November 23, 2007, confirmed a partial biceps tendon tear.  Defendant Kercull recommended conservative care as he did not think the biceps tear required immediate surgery.  Defendant Kercull explained that surgery often is not recommended for a partial tear unless the patient is very active, vigorous and requires a strong biceps tendon.  Plaintiff never saw Defendant Kercull again, but contends that he should have had immediate surgery and that Defendant Kercull took into account his activity level while incarcerated which showed bias in Defendant Kercull's treatment of him.

Nevertheless, when Plaintiff disagreed with Defendant Kercull's recommendation of non-operative treatment, Defendant Strader permitted Plaintiff to obtain a second opinion from another orthopedic physician, non-party Dr. Samuel Caldwell, who examined the Plaintiff just two weeks later on December 7, 2007.  Dr. Caldwell confirmed the diagnosis of a partial biceps

tendon tear and indicated it was reasonable to repair it.  Dr. Caldwell did not rush Plaintiff to

surgery but ultimately repaired the partially torn biceps tendon on December 20, 2007,

approximately six weeks after the injury occurred.  Plaintiff complained about his shoulder pain

for the first time in a surgical follow up examination with Dr. Caldwell on December 26, 2007.

He complained again about his shoulder in January of 2008 and an MRI completed on January

30, 2008 revealed a small rotator cuff tear.  On February 11, 2008, Dr. Caldwell noted that

Plaintiff will "probably at some point require a repair of his rotator cuff" but did not indicate it

was urgent or should be performed in a specified time period.

On these facts, Plaintiff's claims against Defendants Bowen, Strader and Kercull do not

survive the test for "deliberate indifference."  The medical records for treatment Plaintiff

received while incarcerated at SCCF show that he was immediately and nearly continuously

attended to for his left arm complaints.  Plaintiff provides no evidence that Defendants Strader

and Kercull knew that the course of treatment prescribed for Plaintiff's arm complaints would be

ineffective or would cause harmful effects.  Plaintiff claim that Defendant Kercull's notation that

he would have "minimal functional impairment" due to the partially ruptured biceps tendon

arguably shows Defendant Kercull's awareness that conservative treatment would cause him

harm is without merit.  Plaintiff fails to show that the alleged delay in medical care between

Kercull's last treatment of him and the surgery on his partially torn biceps tendon performed by

Dr. Caldwell less than four weeks later actually caused him harm.  Plaintiff had a partial tear of

the biceps tendon at the time he was treated by Defendant Kercull, and still had only a partial tear

at the time of the surgery performed by Dr. Caldwell.  As such, Plaintiff did not suffer any

additional impairment to his elbow as a result of the alleged delay.  (Dkt. No. 90-18 at 30-31;

Dkt. No. 88-4 at ¶¶ 15, 17.)

Moreover, Plaintiff admitted in his deposition that his only complaints to Defendant Kercull concerned his elbow area and not his shoulder or his wrist.   (Dkt. No. 88-3 at 48-49, 65-66, 111-112.)  Plaintiff complained about his shoulder pain for the first time on December 26, 2007 at an appointment with Dr. Caldwell.  (Dkt. No. 90-18 at 33-35.)  Plaintiff made a medical request on December 29, 2007 seeking help for pain in his wrist and hands which was immediately addressed by Defendant Strader.  (Dkt. No. 90-19 at 25; see also Dkt. No. 90-16 at 5.)  During another follow up examination with Dr. Caldwell on January 21, 2008 an MRI of Plaintiff's left shoulder was ordered.  (Dkt. No. 90-19 at 7-11.)  Defendant Strader approved the MRI; it was completed on January 30, 2008 and revealed a small rotator cuff tear in Plaintiff's left shoulder.  *Id.* at 13-15; Dkt. No. 97-4 at 17-18.   After reviewing the MRI report, Dr. Caldwell wrote on February 11, 2008 that Plaintiff will "probably at some point require a repair of his rotator cuff."  *Id.* at 17.

Rather than showing a "conscious disregard" to Plaintiff's serious medical needs, the record demonstrates that Defendants Kercull and Strader responded appropriately to Plaintiff's complaints.  Plaintiff's sole complaint with Dr. Kercull is that he failed to recommend him for surgery after reviewing the elbow MRI of November 23, 2007 and that conservative care was unacceptable.  Yet when he asked for a second orthopedic opinion, Dr. Strader immediately sent him for one with Dr. Caldwell.  When elbow surgery was then recommended to him as a treatment option for his partially torn biceps tendon, it was promptly scheduled and performed.  No further damage to the elbow than the initial injury of a partially torn tendon was discovered during that surgery.

Plaintiff's complaint with Defendant Strader is that the doctor delayed medical care, failed to carry out specialists orders and failed to diagnose a wrist fracture.  On the contrary, the medical records show that Plaintiff was provided with medical care on a regular basis, and his complaints were consistently addressed.  Dr. Strader sent Plaintiff to appropriate specialists, obtained a second opinion for the elbow complaints, permitted all of the diagnostic testing that was recommended by the specialists and adjusted his pain medications numerous times in response to requests by the Plaintiff.

At best, Plaintiff has alleged a mere disagreement with his health care providers, Defendants Strader and Kercull, as to the most appropriate and effective treatment for his elbow and other left arm conditions, which does not rise to the level of a constitutional violation. Furthermore, Plaintiff pleads no more than negligence in claiming Defendant Strader "failed to diagnose a fractured wrist."  (Dkt. No. 1 at 10.)  With regard to his shoulder, non-party Dr. Caldwell did not recommend that surgery be performed emergently or even urgently, just "at some point."  (Dkt. No. 97-4 at 17.)  Thus, any alleged delay on the part of Defendant Strader in scheduling rotator cuff repair surgery does not present a "sufficiently culpable state of mind." *Chance*, 143 F.3d at 702 (internal quotation omitted).  The record here is clear that both Defendant Kercull and Defendant Strader showed concern for Plaintiff's well being, including a concern for the treatment of his injured elbow, wrist and shoulder.  There is no evidence of culpable recklessness on the part of either doctor.  *See Farmer,* 511 U.S. at 839-340 (deliberate indifference element is equivalent to the familiar standard of "recklessness" as used in criminal law).

Accordingly, I recommend that Plaintiff's Eighth Amendment claims against Defendants

Kercull and Strader for deliberate indifference to serious medical need be dismissed and their motions for summary judgment be granted.

## II.     STATE DEFENDANTS' MOTION TO DISMISS

Defendants Annetts, Unger, Khahaifa, Lewis, Cully, Deuel and Coniglio move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which Plaintiff opposes.  (Dkt. Nos. 51, 56 and 62.)  The State Defendants argue dismissal of Plaintiff's Complaint is warranted because: (1) Plaintiff has not stated a plausible medical indifference claim; (2) Plaintiff asserts no personal involvement of Defendants Annetts, Unger, Khahaifa, Lewis and Cully; and (3) Defendants Deuel and Coniglio are entitled to qualified immunity. (Dkt. No. 51.)

### A.     Legal Standard Governing Motion to Dismiss for Failure to State a Claim

A defendant may move to dismiss a complaint under Rule 12 (b)(6) of Federal Rules of Civil Procedure on the ground that the complaint fails to state a claim upon which relief can be granted.

 In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2) of the Federal Rules of Civil Procedure.  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it

has not shown -- that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation

and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the

plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994), *cert. denied*, 513

U.S. 836 (1994) (citation omitted).  However, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Iqbal*, 556 U.S. at 678.  Courts are "obligated to construe a *pro se* complaint liberally." *Harris v.

Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

The State Defendants argue that, in addition to examining the face of the complaint, this

Court should take judicial notice of Plaintiff's medical records because the records were

previously filed in this action in support of a motion by Defendant Coniglio to set aside a default.

(See Dkt. Nos. 45 and 46.)  The State Defendants also submit a declaration from Skip Hughes,

supervisor of an Inmate Grievance Program at Downstate Correctional Facility.  (Dkt. No. 51-1.)

The State Defendants argue that because the declaration is a court document it may be considered

in the context of the motion to dismiss.  (See Dkt. No. 51-2 at 5.)

Although for purposes of deciding a motion to dismiss pursuant to Rule 12(b)(6) the

court's review is generally limited to the facts presented in the complaint, the court may also

consider documents that are "integral" to that pleading, even if they are not attached to or

incorporated by reference into it*. Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)

(quoting *Chambers v. Time Warner, Inc*., 282 F.23d 147, 152-53 (2d Cir. 2002).  Consideration

may also be given "[t]o matters of which judicial notice may be taken, or to documents either in

plaintiffs' possession or of which plaintiffs had knowledge of and relied on in bringing suit."

*Brass v. American Film Technologies, Inc*., 987 F.2d 142, 150 (2d Cir. 1993).  However, while a

court may take judicial notice of a document filed in another matter, the judicial notice taken is to

establish the fact of such litigation and related filings, but not for the truth of the matters asserted

in the litigation or the filings.  *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc*. 969 F.2d 1384,

1388 (2d Cir.1992); see also *Kramer v. Time Warner, Inc*., 937 F.2d 767, 774 (2d Cir.1991)

("[C]ourts routinely take judicial notice of documents filed in other courts ... to establish the fact

of such litigation and related filings.").

Plaintiff here may have had knowledge of medical records being generated by the State

Defendant physicians, but there is nothing in the Complaint to suggest he had actual copies of

them when drafting that pleading, nor that he relied upon the records when drafting it.  Thus, I

take judicial notice of the Plaintiff's medical records from the state facilities (Dkt. Nos. 45 and

46), but only for the fact that they have been filed in this litigation.  I decline to consider these

records or the declaration of Skip Hughes for the purpose of determining the State Defendants'

motion to dismiss.

**B.    Defendant Annetts**

The complaint alleges that Defendant Paul Annetts is the Superintendent of Downstate

Correctional Facility, where Plaintiff was housed from March 28, 2008 to April 9, 2008.  (Dkt.

No. 1 at 12.)  Plaintiff has not named any doctors from Downstate Correctional Facility as

Defendants in this action.  Plaintiff alleges that Defendant Annetts:

27

> Violated the Plaintiff's Eighth Amendment right by causing cruel and
> unusual punishment with lack of medical care, and delayed Plaintiff's
> access to medical attention.  The Defendant failed to diagnose a
> fractured wrist (leading to a deformitively healed wrist (life time of
> pain).  The serious medical condition delay lead to a disability, and
> also failed to carry out, outside Specialist orders, and failed to meet
> Specialist appointments . . . . The Defendant failed to investigate
> condition or provide Plaintiff with effective treatment.   The
> Defendant failed to provide proper medical attention needed to
> properly diagnose to the fullest extent of Plaintiff's injuries that further
> delayed Plaintiff's medical needs . . . The conduct of Prison Officials
> resulted in the unnecessary and wanton infliction of pain, denying and
> delaying access to medical care or intentionally interfering with
> percibed treatment that lead to the pain and suffering of the
> Plaintiff's now disability and disfigurement of his arm and still
> untreated shoulder . . . . The neglect of Administrative Duty imposed
> by Law on the Superintendant Paul Annetts of Downstate
> Correctional Facility had lead Plaintiff to a permanently disabled
> condition, and with this the Superintendant (defendant) had failed to
> protect and preserve health of prison inmate Rosseter (Plaintiff).

*Id*. at 12.

The State Defendants move to dismiss the claims against Defendant Annetts.  (Dkt. No.

51.)  Defendants argue that the complaint fails to plead facts plausibly suggesting that Defendant

Annetts (1) was personally involved in any constitutional violation; or (2) was deliberately

indifferent to Plaintiff's serious medical needs.  (Dkt. No. 51-2 at 7-8, 11-12.)

1.   Personal Involvement

The State Defendants argue that the allegations are insufficient to plausibly suggest that

Defendant Annetts was personally involved in any alleged constitutional violation.  (Dkt. No.

51-2 at 11.)  Specifically, the State Defendants argue that there "is no plausible reason to expect

that [Defendant Annetts] would be personally involved in plaintiff's medical care, and there is no

allegation allowing such a finding."  *Id.* at 11-12.

As stated above, supervisory officials may not be held liable merely because they held a

position of authority (i.e., under the doctrine of *respondeat superior*).  *Black,* 76 F.3d at 74.

Here, however, Plaintiff does not allege simply that Defendant Annetts should be held liable

because he was the Superintendent of Downstate Correctional Facility.  Rather, Plaintiff alleges

that Defendant Annetts himself "failed to diagnose a fractured wrist," failed to carry out a

specialist's orders, and failed to keep appointments with a specialist.  It may be that the State

Defendants can establish through evidence that Defendant Annetts was not, in fact, personally

involved in Plaintiff's medical care.  But accepting the factual allegations of the complaint as

true, as I must for the purposes of a motion to dismiss, Plaintiff has sufficiently alleged that

Defendant Annetts was personally involved.

            2.      Deliberate Indifference

        In order to state a claim that Defendant Annetts violated his Eighth Amendment right to

adequate medical care, Plaintiff must allege facts plausibly suggesting that he "had a serious

medical condition and that it was met with deliberate indifference" by Defendant Annetts.

*Caiozzo*, 581 F.3d at 72.

        The State Defendants concede for the purposes of this motion that Plaintiff's "shoulder

and wrist conditions constitute a 'serious medical need' . . . ."  (Dkt. No. 51-2 at 7.)  The issue,

then, is whether the complaint alleges facts plausibly suggesting that Defendant Annetts acted

with deliberate indifference.

        As discussed above, a complaint that a physician has been negligent in diagnosing or

treating a medical condition does not state a valid claim . . . under the Eighth Amendment."  *Id*.

Stated another way, "medical malpractice does not become a constitutional violation merely

because the victim is a prisoner." *Id.*; *Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is

29

not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.") Where the defendant is not a doctor, the standard is slightly different.  "Non-medical personnel engage in deliberate indifference where they intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to attendant prison personnel." *Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999) (citation and internal quotation omitted).

Plaintiff has simply not alleged any facts elevating his claims against Defendant Annetts above the realm of medical malpractice.  Plaintiff has not alleged that he made his medical problem known to any personnel at Downstate Correctional Facility, where he alleges that he was only housed for eleven days.  (Dkt. No. 1 at 12.)  He has not named any medical staff member from Downstate Correctional Facility as a defendant.  Plaintiff has not alleged that he ever alerted Defendant Annetts to his pain.  Plaintiff alleges only that during those eleven days Defendant Annetts "failed to diagnose a fractured wrist," failed to carry out a specialist's orders, and failed to keep appointments with a specialist.  None of these allegations plausibly suggests that Defendant Annetts acted with deliberate indifference.  Therefore, I recommend that the Court dismiss the claim against Defendant Annetts.

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation omitted).  However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that

"[b]etter pleading will not cure it."  *Id.* at 112 (citation omitted).  Here, although it is unlikely,

better pleading might cure the problem with Plaintiff's claims against Defendant Annetts.

Therefore, I recommend that the Court grant Plaintiff leave to amend the complaint as to

Defendant Annetts.

C.      **Defendant Unger**

The complaint alleges that Defendant David Unger is the Superintendent of Wyoming

Correctional Facility, where Plaintiff was housed from April 9, 2008 to September 24, 2008.

(Dkt. No. 1 at 13.)  Specifically, Plaintiff alleges that Defendant Unger:

> failed to diagnose a fractued wrist (leading to a diformatively healed
> wrist (life time of pain).  Serious medical conditions delay lead to a
> disability with failure to carry out, outside Specialist orders and failed
> to meet Specialist appointments, Failed to investigate condition or
> provide Plaintiff with effective treatment, and failed to provide proper
> medical attention needed to properly diagnose to the fullest extent of
> the Plaintiff's enjuries that further delayed Plaintiff's medical needs.
> Delays due to under staffed medical department at the facility ....
> Conduct of Prison Officials resulted in unecessary and wanton
> infliction of pain, Denying and delaying access to medical care or
> intentionally interfering with perscribed treatment that lead to the
> pain and suffering of Plaintiff's now disability and disfigurement of
> his arm and still untreated shoulder ....  The neglect of administrative
> duty imposed by Law on the Superintendant David Unger of
> Wyoming Correctional Facility had led Plaintiff's to a permanently
> disabled condition, and with this the Superintendent (Defendant) had
> failed to protect and preserve health of prison inmate Rosseter
> (Plaintiff).

(Dkt. No. 1 at 13.)  The only meaningful difference between the allegations against Defendants

Annetts and Unger is that Plaintiff alleges that he was at Wyoming Correctional Facility for a

longer period of time (five and a half months), alleges that there were "[d]elays due to under

staffed medical department at the facility," and has named one member of the medical staff (Dr. DePhelip) as a defendant.

The State Defendants advance the same arguments regarding Defendant Unger that they asserted regarding Defendant Annetts. (Dkt. No. 51-2 at 7-8, 11-12.) For the reasons discussed above regarding Defendant Annetts, I find that the complaint sufficiently alleges that Defendant Unger was personally involved in the alleged constitutional violation. However, as with Defendant Annetts, the complaint does not state an Eighth Amendment cause of action against Defendant Unger. Plaintiff's conclusory allegations about delays and failures to diagnose do not plausibly suggest that Defendant Unger acted with deliberate indifference to Plaintiff's serious medical need. Therefore, I recommend that the Court grant the State Defendants' motion to dismiss the claim against Defendant Unger with leave to amend.

### D.    Defendant Khahaifa

The complaint alleges that Defendant Sibatu Khahaifa is the Superintendent of Orleans Correctional Facility, where Plaintiff was housed from September 24, 2008 to December 1, 2008. (Dkt. No. 1 at 15.) Plaintiff alleges that Defendant Khahaifa:

> Violated the Plaintiff's Eighth Amendment right by causing cruel and unusual punishment with lack of medical care and delayed Plaintiff['s] access to medical attention, Serious medical attention delay lead to a disability with Failure to carry out, out side Specialist orders, and also Failed to investigate condition or provide Plaintiff with effective treatment. The Defendant failed to provide proper medical attention needed to properly diagnose to the fullest extent of the Plaintiff's injuries that further delayed Plaintiff's medical needs .... The Conduct of Prison Officials resulted in unnecessary and wanton infliction of pain, Denying and delaying access to medical care or intentionally interfering with perscribed treatment that led to pain and suffering of the Plaintiff's now disability and disfigurement of his arm and still untreated shoulder .... The neglect of Administrative Duty imposed by Law on Superintendant Sibatu Khahaifa of Orleans

32

> Correctional Facility (SHU) had led Plaintiff to a permanently
> disabled condition, and with this the Superintendant (Defendant) had
> failed to protect and preserve the health of prison inmate Rosseter
> (Plaintiff).

*Id*.  Similar to the allegations against Defendant Unger, Plaintiff has named a member of

Defendant Khahaifa's medical staff, Dr. Lewis, as a Defendant.

The State Defendants advance the same arguments regarding Defendant Khahaifa that

they have asserted regarding Defendant Annetts and Defendant Unger.  (Dkt. No. 51-2 at 7-8,

11-12.)  For the reasons discussed above regarding those Defendants, I find that the complaint

sufficiently alleges that Defendant Khahaifa was personally involved in the alleged constitutional

violation.  However, as with Defendant Annetts and Defendant Unger, the complaint does not

state an Eighth Amendment cause of action against Defendant Khahaifa.  Plaintiff's conclusory

allegations about delays and failures to diagnose do not plausibly suggest that Defendant

Khahaifa acted with deliberate indifference to Plaintiff's serious medical need.   Therefore, I

recommend that the Court grant the State Defendants' motion to dismiss the claim against

Defendant Khahaifa with leave to amend.

### E.    Defendant Cully

The complaint alleges that Defendant Malcom R. Cully is the Superintendent of

Livingston Correctional Facility, where Plaintiff was housed from December 1, 2008 to the date

he filed the complaint in this action.  (Dkt. No. at 17.)  Plaintiff alleges that Defendant Cully:

> violated the Plaintiff's Eighth Amendment Right by causing cruel and
> unusual punishment.  From December 1, 2008, to present with lack
> of medical care and delayed Plaintiff's access to medical attention,
> Serious medical condition delay lead to a disability[.] The Defendants
> failure to carry out, out side Specialist orders and failed to investigate
> condition or provide Plaintiff with effective treatment.    The

> Defendant failed to provide medical attention needed to properly diagnose to the fullest extent of the Plaintiff's injuries that further delayed Plaintiff's medical needs.  The Defendant caused delays due to understaffing of the medical department at [t]he facility .... The conduct of Prison Officials resulted in unnecessary and wanton infliction of pain, Denying access to medical care of intentionally interfering with perscribed treatment that led to the pain and suffering of the Plaintiff's now disability and disfigurement of his arm and still untreated shoulder .... The neglect of Administrative Duty imposed by Law on Superintendent Malcom R. Cully of Livingston Correctional Facility had led Plaintiff to a permanently disabled condition, and with this Superintendent ... had failed to protect and preserve the health of prison inmate Rosseter (Plaintiff).

*Id*.  Plaintiff's allegations against Defendant Cully are nearly identical to his allegations against Defendant Unger.  The only meaningful distinction is that Plaintiff was housed at Defendant Cully's facility for a much longer period of time and that Plaintiff has named two Defendant doctors (Defendants Deuel and Coniglio) who worked at the facility.

The State Defendants advance the same arguments regarding Defendant Cully that they asserted regarding the other Defendant Superintendents.  (Dkt. No. 51-2 at 7-8, 11-12.)  For the reasons discussed above, I find that the complaint sufficiently alleges that Defendant Cully was personally involved in the alleged constitutional violation.  However, as with the other Superintendent Defendants, the complaint does not state an Eighth Amendment cause of action against Defendant Cully.  Plaintiff's conclusory allegations about delays and failures to diagnose do not plausibly suggest that Defendant Cully acted with deliberate indifference to Plaintiff's serious medical need.   Therefore, I recommend that the Court grant the State Defendants' motion to dismiss the claim against Defendant Cully with leave to amend.

F.      **Defendant Lewis**

The complaint alleges that Defendant Dr. D. Lewis is employed at Orleans Correctional

Facility, where Plaintiff was housed from September 24, 2008 to December 1, 2008.  (Dkt. No. 1

at 16.)  The complaint alleges that Defendant Lewis:

> Violated the Plaintiff's Eighth Amendment right by causing lack of
> medical care and delayed Plaintiff access to medical.  The course the
> Defendant chose not to produce Plaintiff's medical needs when in
> pain was a congius disregard of an excessive risk to the Plaintiff's
> health .... Failure to treat a serious condition requiring surgery, that
> the injurys were foreseen.  Purposely ignoring the "serious medical
> needs of the Plaintiff.  "The medical condition the Plaintiff suffers
> from is extreamly painfull and he was simply left to endure the pain
> without proper medical attention or care .... Prison Contracted
> Physicians owe no less duty to prisoners who must except their care
> than do private Physicians to their patients who are free to choose,
> and this the Defendant failed to do also.  Dr. D. Lewis exposed
> inmate Rosseter (Plaintiff) to undo suffering by denying reasonable
> request for medical treatment.

*Id*.

The State Defendants move to dismiss the claim against Defendant Lewis.  (Dkt. No. 51.)

Defendants argue that (1) Defendant Lewis was not personally involved in Plaintiff's medical

care; and (2) the complaint does not allege facts plausibly suggesting that Defendant Lewis was

deliberately indifferent to Plaintiff's serious medical needs.  (Dkt. No. 51-2 at 9, 11.)

For the reasons discussed above regarding the Superintendent Defendants, the complaint

alleges facts plausibly suggesting that Defendant Lewis was personally involved.  However, the

complaint does not allege facts plausibly suggesting that Defendant Lewis was deliberately

indifferent to Plaintiff's serious medical needs.  The only facts (as opposed to conclusions) that

Plaintiff alleges about Defendant Lewis are that Defendant Lewis "chose not to produce

Plaintiff's medical needs when in pain" and that Defendant Lewis "fail[ed] to treat a serious

condition requiring surgery." *Id.*  The factual allegations of the complaint amount to, at most,

medical malpractice.  Therefore, I recommend that the Court grant the State Defendants' motion

to dismiss the claim against Defendant Lewis with leave to amend.

### G.    Defendant Deuel

The complaint alleges that Defendant Dr. Colleen Deuel was employed at Livingston

Correctional Facility, where Plaintiff was housed from December 1, 2008 to the time he filed the

complaint.  (Dkt. No. 1 at 18.)  Plaintiff alleges that Defendant Deuel:

> Violated Plaintiff's Eighth Amendment Right by causing cruel and
> unusual punishment from <u>December 1, 2008</u>, to present .... Lack of
> medical care delayed Plaintiff's access to medical attention Serious
> medical condition delay leading to disability, Failure to carry out,
> outside Specialist orders, Failed to provide proper medical attention
> needed to properly diagnose to the fullest extent of Plaintiff's injuries
> that further delayed Plaintiff's medical needs.  Dr. Colleen Deuel MD.
> Stated to me that my arm cannot be fixed nor can the nerves be
> repaired.  She also stated this is a lifetime injury although she refuses
> to put her words in writing .... The conduct of Dr. Colleen Deuel (a
> N.S. contracted Physician) resulted in unnecessary and wanton
> infliction of pain, denying and delaying access to medical care or
> intentionally interfering with prescribed treatment that led to pain and
> suffering of the Plaintiff's now disability and disfigurement of his arm
> and still untreated shoulder .... The neglect of Duty Dr. Colleen Deuel
> imposed by Law had led Plaintiff to a permanently disabled
> condition, and with this Dr. Colleen Deuel had failed to protect and
> preserve the health of prison inmate Rosseter (Plaintiff).

*Id*.

The State Defendants move to dismiss the claim against Defendant Deuel.  (Dkt. No. 51.)

Defendants argue that (1) the complaint fails to allege facts plausibly suggesting that Defendant

Deuel was deliberately indifferent to Plaintiff's serious medical needs; and (2) Defendant Deuel

is entitled to qualified immunity.  (Dkt. No. 51-2 at 9, 12-14.)  I will address only the first

argument, as it is dispositive.

The only facts that Plaintiff alleges about Defendant Deuel are that she "delayed

Plaintiff's access to medical attention," "failed] to carry out outside specialist orders," "failed to

provide proper medical attention," and that she told Plaintiff "this is a lifetime injury" but refused

to put that statement in writing.  These facts do no plausibly suggest that Defendant Deuel was

deliberately indifferent.  As with Defendant Lewis, the facts as pleaded suggest medical

malpractice at the most.  Therefore, I recommend that the Court grant the State Defendants'

motion to dismiss the claim against Defendant Deuel with leave to amend.

### H.    Defendant Coniglio

The complaint alleges that Defendant Dr. G. Coniglio is apparently employed at Attica

Correctional Facility.  (Dkt. No. 1 at 19.)  Plaintiff was housed at Livingston Correctional

Facility between December 1, 2008 and January 14, 2010 during the time he was allegedly

treated by Defendant Coniglio.  *Id.*  Plaintiff alleges that Defendant Coniglio:

> Violated the Plaintiff's Eighth Amendment right by causing cruel and
> unusual punishment with lack of medical care, delayed Plaintiff's
> access to medical attention, serious medical condition delay
> (continuing the delay) that has lead to Plaintiff's disability and
> continuing his pain .... The Defendant failed to investigate condition
> to provide Plaintiff with effective treatment.  The Defendant failed to
> provide proper medical attention needed to properly diagnose to the
> fullest extent of Plaintiff's injuries that further delayed Plaintiff's
> medical needs .... Dr. G. Coniglio MD. has furthermore misdiagnosed
> treatment of Plaintiff's nerve damage (tremores) to be psychogenic
> that Plaintiff was having psychological reactions rather than further
> any studies on the nerves them selves, such as an EMG test .... The
> doctor did a Bankhart surgery that was a failure and produced no
> results except more increased pain in the shoulder.  Plaintiff later
> found that while under anesthesia the Defendant removed the Bursa
> from Plaintiff's shoulder without Plaintiff's knowledge or consent to

> do so .... With knowledge of a torn Rotator-cuff, a partial tear over the
> lateral deltoid area and nerve damage, the Defendant abandoned the
> Plaintiff as a patient causing more delays.  After telling the Defendant
> I was in more pain after the Bankhart surgery the Defendant informed
> me to find a different Doctor to do any other surgery's or MRI that
> were needed.  Prison contracted Physicians owe no less duty to
> prisoners who must except thier care than do private physicians to
> thier patients who are free to choose, and this the Defendant failed to
> do also.

*Id.*

The State Defendants move to dismiss the claim against Defendant Coniglio.  (Dkt. No.

51.)  Defendants argue that (1) the complaint fails to allege facts plausibly suggesting that

Defendant Coniglio was deliberately indifferent to Plaintiff's serious medical needs; and (2)

Defendant Coniglio is entitled to qualified immunity.  (Dkt. No. 51-2 at 9-10, 12-14.)

    1.    <u>Deliberate Indifference</u>

The State Defendants argue that the complaint fails to allege facts plausibly suggesting

that Defendant Coniglio acted with deliberate indifference.  (Dkt. No. 51-2 at 9-10.)

Specifically, Defendants argue that the complaint merely alleges that Plaintiff "did not like the

results of his shoulder surgery," note that they "have found no decisional law to support a

deliberate indifference claim over the incidental removal of a bursa," and state that "the record in

this case . . . disclosed the bursa is routinely removed during this type of surgery."  *Id*.

Plaintiff has alleged more specifics about Defendant Coniglio than about the other

Defendants.  On the facts alleged against Dr. Coniglio, Plaintiff suffered a "[t]orn Rotator-cuff, a

partial tear over the lateral deltoid area and nerve damage" which were known to Defendant

Coniglio, yet he "abandoned the Plaintiff as a patient causing more delays."  (Dkt. No. 1 at 19.)

Plaintiff further alleges that Defendant Coniglio told him "[t]o find a different Doctor to do any

other surgery's or MRI that were needed."  *Id*.  While Plaintiff may not have had a life

threatening condition, he alleges that he has disability and pain because of Defendant Coniglio's

abandonment and delays.  *Id.*  If these alleged facts are proved true, Plaintiff has plead a plausible

claim against Dr. Coniglio.  See, e.g.*, Benjamin v. Schwartz*, 299 F.Supp.2d 196, 200-201

(S.D.N.Y. 2004) (Inmate's claim against physician who refused to schedule surgery in timely

manner knowing that extended delay would lessen chance for recovery pled "a claim that would

be viable if the facts held up.").  Therefore, I recommend that the Court deny the State

Defendants' motion to dismiss the claim against Defendant Coniglio.

      2.    <u>Qualified Immunity</u>

     The State Defendants argue that Defendant Coniglio is entitled to qualified immunity.

(Dkt. No. 51-2 at 12-14.)

     The qualified immunity inquiry in a prisoner civil rights case generally involves two

issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff, establish a

constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir.

2004) (citations and internal quotation omitted); accord*, Higazy v. Templeton*, 505 F.3d 161, 169

n.8 (2d Cir. 2007) (citations omitted).

     In determining the second issue (i.e., whether it would be clear to a reasonable officer that

his conduct was unlawful in the situation confronted), courts in this Circuit consider three

factors: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether

the decisional law of the Supreme Court and the applicable circuit court support the existence of

the right in question; and (3) whether under preexisting law a reasonable defendant official

would have understood that his or her acts were unlawful." *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991), *cert. denied*, 503 U.S. 962 (1992) (citations omitted).

Generally, "the defense of qualified immunity cannot support the grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (quoting *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983)). The defense will only be successful at the motion to dismiss stage if the defense appears on the face of the complaint with all reasonable inferences drawn in the plaintiff's favor. *Id*. at 436.

Here, facts establishing the defense do not appear on the face of the complaint. Therefore, I recommend that the Court decline to find qualified immunity for Defendant Coniglio at this stage in the proceedings.

## III.   STATE DEFENDANTS' MOTION TO TRANSFER

The State Defendants move to transfer the claims against them to the Western District of New York.  (Dkt. No. 51.)

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a);  *Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990); *Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) (citing cases); *Kelly v. Kelly*, 911 F.Supp. 70, 71 (N.D.N.Y. 1996) (Hurd, M.J.).  Courts have "broad discretion in determining a motion for transfer, but under § 1404(a), as a threshold matter, [it must be determined] whether the action sought to be transferred is one that might have been brought in the transferee court." *Fowlkes v. Rodriguez*, 584 F.Supp.2d 561, 577 (E.D.N.Y. 2008) (citation and internal quotation omitted).

To establish that an action "might have been brought" in the transferee venue, the moving

party must establish that (a) venue is proper in the transferee venue; and (b) the transferee venue

had personal jurisdiction over the defendant on the date this action commenced.  *Anglo American*

*Ins. Group P.L.C. v. CalFed Inc.,* 916 F.Supp. 1324, 1330 (S.D.N.Y. 1996).  The relevant federal

venue statute provides, in pertinent part:

> A civil action wherein jurisdiction is not founded solely on diversity
> of citizenship may, except as otherwise provided by law, be brought
> only in (1) a judicial district where any defendant resides, if all
> defendants reside in the same State, (2) a judicial district in which a
> substantial part of the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is the subject of the
> action is situated, or (3) a judicial district in which any defendant may
> be found, if there is no district in which the action may otherwise be
> brought.

28 U.S.C. § 1391(b).

Here, a substantial part of the events or omissions giving rise to Plaintiff's remaining

claims occurred in the Western District of New York.  The claims regarding events at the SCCF

occurred in the Northern District of New York but, as discussed above, Plaintiff has not raised a

triable issue of fact as to those claims.  With the exception of Plaintiff's claims against Defendant

Annetts, all of the remaining claims arise from Plaintiff's medical treatment at facilities in the

Western District of New York.  Therefore, this action might have been brought in the Western

District of New York.

Having found that this action might have been brought in the transferee court, this Court

must now consider the following factors:

> (1) the convenience of witnesses, (2) the convenience of the parties,
> (3) the locus of operative facts, (4) the availability of process to
> compel the attendance of unwilling witnesses, (5) the location of
> relevant documents and the relative ease of access to sources of proof,

> (6) the relative means of the parties, (7) the forums' familiarity with
> the governing law, (8) the weight accorded the plaintiff's choice of
> forum, and (9) trial efficiency and the interest of justice, based on the
> totality of the circumstances.

*Fowlkes*, 584 F.Supp.2d at 577.

The State Defendants argue that these factors weigh in favor of transfer to the Western District of New York. (Dkt. No. 51-2 at 16-17.) Plaintiff argues that because the case originated in Saratoga County and the Saratoga County defendants "have not been dismissed at this time," transfer "would be an inconvenience to all parties at this time." (Dkt. No. 56 at 1.) As Defendants correctly note, the balance of the factors weighs in favor of transferring this action to the Western District of New York.

As discussed above, summary judgment should be granted dismissing all of the claims against the Saratoga County Defendants. With the exception of the claim against Defendant Annetts, all of the other claims arose in the Wester District of New York. "The situs of the operative facts is an important factor in deciding motions to transfer .... Where a cause of action arises from claims of alleged wrongdoing in the proposed transferee district, transfer is appropriate. Transfer is not precluded where the operative facts have some connection to the initial forum if the transferee district has a stronger connection with the operative facts raised in the pleadings." *Sheet Metal Workers' Nat'l Pension Fund v. Gallagher*, 669 F. Supp. 88, 92-93 (S.D.N.Y. 1987) (citations omitted). The Defendants, with the exception of Defendant Annetts, are in the Western District of New York, and Plaintiff is currently housed at a correctional facility in that District. Relevant documents are in the Western District of New York. Based on the totality of circumstances, transfer is appropriate. Therefore, I recommend that this case be

transferred to the Western District of New York if the Court adopts my recommendation regarding the claims against the Saratoga County Defendants.

## IV.     PLAINTIFF'S MOTION TO APPOINT A MEDICAL EXPERT

Plaintiff moves for an order directing appointment of two medical expert witnesses - a neurologist and an orthopedist - pursuant to Fed.R. Evid. 706.  (Dkt. No. 77.)  He seeks such an order because he "is indigent, cannot afford to pay for an expert witness testimony, and cannot prove his case without such testimony."  *Id.* at 1.

In accordance with Fed. R. Evid. 706(a), the Court, on its own motion or on motion of a party, may appoint an expert witness.  "The determination to appoint an expert rests solely in the Court's discretion and is to be informed by such factors as the complexity of the matters to be determined and the Court's need for a neutral, expert view."  *Pabon v. Goord,* 99CIV5869*, 2001 U.S. Dist. LEXIS 10685 at *3, 2001 WL 856601 at *1 (S.D.N.Y. 2001) (citations omitted).  As one Court stated: "the most important factor in favor of appointing an expert is that the case involves a complex or esoteric subject beyond the trier-of-fact's ability to adequately understand without expert assistance."  *Reynolds v. Goord,* 98 Civ. 6722, 2000 U.S. Dist. LEXIS 8743 at *4, 2000 WL 825690 at *2 (S.D.N.Y 2000).  Expert testimony is generally permitted if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  The expert is entitled to reasonable compensation set by the Court which is to be paid by the parties, but the Court may assess the entire cost of the expert's compensation to one party if the other party is indigent and compelling circumstances exist.  *See* Fed. R. Evid.706(b); *see also Pabon,* 2001 U.S. Dist. LEXIS10685 at *3, 2001 WL 856601 at * 1.

In the present case, the issue posed, and what Plaintiff must ultimately prove, is whether the Defendants acted with deliberate indifference to Plaintiff's serious medical needs.  As noted above, the test to decide whether any of the Defendants acted with deliberate indifference is a subjective one.  The Defendants cannot be found to be deliberately indifferent unless they knew of and disregarded a substantial risk to Plaintiff's health.  See *Farmer,* 511 U.S. at 837.  Therefore, "[t]he test for deliberate indifference is more closely akin to criminal law than to tort law" so "[t]he question of whether the... [Defendants] ... displayed deliberate indifference toward... [Plaintiff's] ... serious medical needs did not demand that the jury consider probing, complex questions concerning medical diagnosis and judgment."  *Ledford v. Sullivan,* 105 F.3d 354, 359 (7th Cir. 1997).

While I recognize that the *Ledford* decision is not controlling in this Circuit, the reasoning of the Seventh Circuit, based upon the well recognized  law of the deliberate indifference standard, is sound.  Plaintiff's entire Complaint is based upon allegations of violations of his Eighth Amendment right to proper medical care.  Therefore, I find that Plaintiff does not need medical experts to prove his claims against the Defendants of deliberate indifference to serious medical needs.

Accordingly, Plaintiff's motion for a Court order to appoint physician experts with specialties of neurology and orthopedics pursuant to Fed. R. Evid. 706 is hereby denied.

**ACCORDINGLY**, it is

**RECOMMENDED** that the motion of Defendants Stephen Strader and James D. Bowen for summary judgment (Dkt. No. 90) be **GRANTED**; and it is further

44

**RECOMMENDED** that the motion of Defendant Robert G. Kercull for summary judgment (Dkt. No. 88) be **GRANTED**; and it is further

**RECOMMENDED** that the motion of the State Defendants to dismiss the case (Dkt. No. 51) be **GRANTED IN PART** .  It is recommended that the motion be granted as to Defendants Annetts, Unger, Khahaifa, Lewis, Cully and Deuel with leave to amend and denied as to Defendant Coniglio; and it is further

**RECOMMENDED** that the Court  transfer this action to the Western District of New York if the Report-Recommendation is adopted as to the motions for summary judgment; and it is further

**ORDERED** that Plaintiff's motion to appoint a medical expert (Dkt. No. 77) is **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: June 29, 2012
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge